IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHARLES LOCKETT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 10 C 2369 |
| ) | |
| CITY OF CHICAGO, ) | |
| ) | |
| Defendant. ) | |

MEMORANDUM OPINION AND ORDER

In his Amended Complaint (Dkt. No. 27 ("Am. Compl.")) filed October 15, 2010, plaintiff Charles Lockett alleged one count of unlawful discrimination on the basis of race under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-5 *et seq.*, against his former employer, defendant City of Chicago ("City"). Before the court is the City's Motion for Summary Judgment. (Dkt. No. 63 ("Motion").) For the reasons stated below, the City's Motion is granted.

BACKGROUND

The City has filed a statement of uncontested material facts pursuant to Local R. 56.1(a)(3). (Dkt. No. 65.) Lockett's response (Dkt. No. 69) does not contest any of those facts, which are the basis for the following summary.

Lockett, an African American, was employed as a Traffic Control Aide ("TCA") in the City's Office of Emergency Management and Communications ("OEMC"), Traffic Management Authority, from October 2, 2006, until his termination on June 30, 2008. (City's SOF ¶ 2.) Lockett's primary duty as a TCA was to control the flow of pedestrian and vehicular traffic at assigned pick-up and drop-off lanes at O'Hare Airport. (*Id.* ¶¶ 6, 13.) Additional duties included

ensuring the safety of pedestrians who were crossing the street, assisting disabled and elderly pedestrians across the street as required, and giving geographic directions to the public. (*Id.* ¶ 6.)

On June 22, 2008, Lockett was assigned to control traffic at the rental car bus stop outside Terminal 2 of O'Hare Airport. (*Id.* ¶ 13.) During his shift, a man with a "deep" accent approached Lockett and requested Lockett's assistance to locate a hotel shuttle. (*Id.* ¶ 14.) Lockett told the man to wait until Lockett cleared the traffic lane. (*Id.* ¶ 16.) Once he cleared the lane, Lockett "walked [the man] across the street to the corner where the hotel van was located" and directed the man to walk down the street. (*Id.* ¶ 17.) It took Lockett three to five minutes to show the man where the hotel shuttle center was located and to return to his assigned post. (*Id.* ¶ 19.) As Lockett was returning to his post, his supervisor Kathie Gilbert stopped him and told him to give her his City-issued radio and go home, which he did. (*Id.* ¶ 20.) Gilbert had seen Lockett carrying a passenger's luggage, which was not allowed. (*Id.* ¶¶ 20, 24.) Gilbert informed her supervisor Naureen Cooney about the incident. (*Id.*) Cooney then informed her supervisor John Killackey, who recommended firing Lockett. (*Id.* ¶ 21.)

On June 23, 2008, Lockett returned to O'Hare to work his scheduled shift. (*Id.* ¶ 22.) After the other TCAs had received their assignments, Cooney and Gilbert met with Lockett and informed him that his employment was being terminated. (*Id.* ¶ 23.) According to Lockett, Cooney and Gilbert said he was being terminated for assisting a pedestrian to his destination for tips. (*Id.*) On or about June 30, 2008, based on Killackey's recommendation, OEMC sent Lockett a letter notifying Lockett that his employment had been terminated. (*Id.* ¶ 27.)

TCAs are instructed not to leave their assigned posts for any amount of time, or for any reason other than an emergency, without the permission of their supervisor, and that they are not

allowed to carry a passenger's luggage. (*Id.* ¶ 8.) On December 16, 2006 and December 27, 2006 Lockett was written up for abandoning his post. (*Id.* ¶ 12.) Within a week prior to his termination, Gilbert had observed Lockett away from his post one additional time without permission, carrying a passenger's luggage. (*Id.* ¶ 24.) Either offense – leaving his post without permission or carrying a passenger's luggage – by itself was grounds for terminating Lockett's employment. (*Id.* ¶ 26.)

On February 9, 2009, Lockett filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), which alleged that he was "falsely accused of talking [sic] a tip and subsequently discharged" and that he was discriminated against "because of his race, Black" in violation of Title VII. (*Id.* ¶ 28.) Lockett then filed suit.

## ANALYSIS

A grant of summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "There is no genuine issue of material fact when no reasonable jury could find in favor of the nonmoving party." *Brewer v. Bd. of Trs. of the Univ. of Ill.*, 479 F.3d 908, 915 (7th Cir. 2007). When ruling on a motion for summary judgment, the court must consider the facts before it in the light most favorable to the nonmoving party, drawing all reasonable inferences in the nonmoving party's favor. *McCann v. Iroquois Mem'l Hosp.*, 622 F.3d 745, 752 (7th Cir. 2010).

There are two methods, direct and indirect, by which a plaintiff can show that his termination was based on unlawful discrimination. *Burnell v. Gates Rubber Co.*, 647 F.3d 704, 708 (7th Cir. 2011). Under the direct method, a plaintiff can survive summary judgment if he presents either direct evidence of discriminatory intent or enough circumstantial evidence "to allow a rational jury

to infer that discriminatory intent motivated his firing." *Id.* Direct evidence "would be an admission by the decisionmaker that the adverse employment action was motivated by discriminatory animus." *Darchak v. City of Chicago Bd. of Educ.*, 580 F.3d 622, 631 (7th Cir. 2009). Circumstantial evidence can include "suspicious timing; ambiguous statements; behavior or comments directed at others in the protected class; and evidence that similarly situated employees outside the protected class received systematically better treatment." *Burnell*, 647 F.3d at 708.

Lockett has presented no direct or circumstantial evidence of discriminatory intent. In his deposition, he stated that neither Cooney nor Gilbert said anything he considered racist or made him believe he was being treated differently because of his race. (Dkt. No. 65, Ex. B at 10:20–11:3.) He also stated that he knows of no other African American City employees who experienced any alleged race discrimination and that "everyone was treated equally." (*Id.* at 51:12–52:17.) Additionally, Lockett does not know of any other similarly situated non-African American employee who received favorable treatment. (*Id.* at 352:11-17.) Lockett stated that the only reason he believes that his race motivated his termination is that he is African American and Gilbert and Cooney are Caucasian. (*Id.* 9:8-19.) The fact that Lockett and his supervisors are of different races would not allow a reasonable jury to infer that Lockett was fired because he was African American. *See Rand v. CF Industries, Inc.*, 42 F.3d 1139, 1146 (7th Cir. 1994) (in Title VII cases, "[i]nferences and opinions must be grounded on more than flights of fancy, speculations, hunches, intuitions, or rumors"). This assertion, without more, is insufficient to make Lockett's claim survive summary judgment under the direct method.

To survive summary judgment under the indirect method, Lockett must establish a *prima facie* case of race discrimination by showing four things: (1) that he is an African American; (2) that

he met the City's reasonable job expectations; (3) that the City terminated his employment; and (4) that similarly-situated non-African American's were treated more favorably. *Montgomery v. American Airlines*, 626 F.3d 382, 394 (7th Cir. 2010). The City concedes that Lockett has satisfied the first and third elements, but argues that he cannot satisfy the second and fourth elements. The court agrees.

Supervisors regularly instructed TCAs that they were not to leave their posts without permission. (SMA ¶ 8.) Prior to his termination, Lockett had been written up twice for leaving his assigned post. (*Id.* ¶ 12.) A week before his termination, a supervisor saw Lockett away from his assigned post. (*Id.* ¶ 24.) Finally, on June 22, 2008, Lockett again left his post without permission. (*Id.* ¶¶ 17-19.) Because leaving one's post without permission is alone cause for termination (*Id.* ¶ 26.), it is clear that Lockett was not meeting the City's reasonable job expectations when he abandoned his post. He therefore fails to meet the second element of the *prima facie* case. As to the fourth element, as stated above, Lockett admitted that the knows of no other non-African American employees who were treated more favorably. (Dkt. No. 65, Ex. B at 352:11-17.) Lockett has failed to establish a *prima facie* case of race discrimination, and therefore cannot survive summary judgment under the indirect method.

## CONCLUSION

For the reasons stated above, the City's Motion for Summary Judgment (Dkt. No. 63) is granted. Lockett's previous motion to amend his complaint (Dkt. No. 66) was granted (Dkt. No 68). If Lockett wishes to amend his complaint to add an additional allegation against the City, he must do so by 12/30/11. Otherwise, this action will be terminated.

ENTER:

                                                          _____
JAMES F. HOLDERMAN
Chief Judge, United States District Court

Date: December 9, 2011